# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### February 2, 2010 Session

## STATE OF TENNESSEE v. JEFFREY BOOTH

**Direct Appeal from the Criminal Court for Shelby County**
**No. 07-07264    W. Otis Higgs, Jr., Judge**

---

**No. W2009-00452-CCA-R3-CD  - Filed November 15, 2010**

---

The Defendant-Appellant, Jeffrey Booth, was convicted by a Shelby County Criminal Court jury of two counts of especially aggravated kidnapping, a Class A felonies; one count of aggravated robbery, a Class B felony; and one count of aggravated assault, a Class C felony. Booth received concurrent sentences of twenty years for each of the two especially aggravated kidnapping convictions, eight years for the aggravated robbery conviction, and three years for the aggravated assault conviction, for an effective sentence of twenty years in confinement. On appeal, Booth argues that (1) the evidence was insufficient to support his convictions; (2) the prosecutor made improper comments during closing argument; (3) his separate convictions for especially aggravated kidnapping, aggravated robbery, and aggravated assault violate due process pursuant to State v. Anthony, 817 S.W.2d 299 (Tenn. 1991) and State v. Dixon, 957 S.W.2d 532 (Tenn. 1997); (4) the trial court erred in failing to instruct the jury on voluntary intoxication; (5) the trial court erred in failing to merge the two convictions for especially aggravated kidnapping. Upon review, we merge the dual especially aggravated kidnapping convictions into a single conviction and remand the case to the trial court for entry of corrected judgments to reflect the merger of these convictions. We affirm the judgments of the trial court in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court
Affirmed and Remanded for Entry of Corrected Judgments**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JERRY L. SMITH and J. C. MCLIN, JJ., joined.

Robert W. Jones, District Public Defender; Kindle E. Nance, Assistant Public Defender (at trial), Memphis, Tennessee; Lance R. Chism (on appeal), Memphis, Tennessee, for the Defendant-Appellant, Jeffery Booth.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Christopher J. Lareau, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Trial.** Brenda McKinnie, the cashier at the Wonder Bread Store in Memphis, Tennessee, testified that she was working at the store on July 3, 2007. At around 6:00 p.m. that day, she was helping the last three customers, two men and a woman, before she closed the store. The woman paid for her merchandise and left. One of the male customers, whom she identified at trial as Booth, made her nervous because he "kept going back and forth, back and forth, changing merchandise, which was a cupcake, right, going back getting the same thing." She said Booth "was looking down, had his head down, [and] had a blue baseball cap on."

McKinnie said that Booth allowed the last male customer, Mervin Bridges, to pay ahead of him. Bridges purchased his merchandise, and Booth made his purchase. As Bridges was about to leave, Booth said that he was going to exchange his cupcake but instead walked over to Bridges and brandished a knife, which he held up to Bridges's throat. Booth brought Bridges back to the cash register and told McKinnie that he would kill Bridges if she did not give him the money out of the register. McKinnie opened the cash register, backed away, and Booth reached over with his free hand and grabbed a total of $191 from the cash register. Booth then told Bridges that they "were going to leave here together[.]" Booth placed the knife at Bridges's back, and they left the store. McKinnie immediately called 9-1-1. Moments later, she saw Booth "limping across Jackson Avenue going towards Lloyd Circle." McKinnie identified Booth as the perpetrator when the police brought him back to the store approximately thirty minutes after the crime occurred. Although McKinnie stated that Booth was wearing a white shirt and a blue baseball cap when the incident occurred, she said that he was wearing a fuchsia shirt and no baseball cap when she identified him in the back of the police car.

Mervin Bridges testified that once he and Booth left the store, Booth walked him out to Bridges work van, and Bridges informed him that his workers were in the van. Once Booth saw the workers, including an employee by the name of Terry Palony, he fled. Booth was able to escape, although Bridges and his workers attempted to follow him. Shortly thereafter, Bridges identified Booth, who was sitting in a police car, as the perpetrator. Bridges said that Booth had changed from a white shirt to a red one, removed his baseball cap, and attempted to comb his hair to conceal his identity. Bridges and his employee Terry Palony identified Booth as the perpetrator at trial. However, Palony testified that Booth was

wearing a red shirt during the incident but had on a white one at the time of his arrest.

Officer William Gray of the Memphis Police Department testified that he and several other officers responded to call of an armed robbery at the Wonder Bread Store. When Officer Gray found Booth in a nearby neighborhood, Booth threw "a wad of money" into the air. Following Booth's arrest, Officer Gray discovered a Hostess Cupcake on or near Booth's person. The money Booth had thrown was collected and totaled $191. Officer Gray identified Booth at trial as the individual that threw the money prior to his arrest. Officer Jeffrey Garey of the Memphis Police Department testified that he discovered "a silver colored knife with white cloth wrapped around the handle" in a yard near where Booth was taken into custody. The knife did not contain any latent fingerprints.

**Timeliness of Motion for New Trial.** The State contends that the "Amended Motion for New Trial" filed by appointed counsel on January 16, 2009, was untimely. It argues that the "Amended Motion for New Trial" constituted the initial motion for a new trial in this case, since the first motion for new trial filed by trial counsel was withdrawn at the sentencing hearing on October 2, 2008, and the thirty-day time limit in which to file a motion for new trial began to run on that date, thereby making the January 16, 2009 filing untimely and making all issues presented in the "Amended Motion for New Trial" waived. Although the State acknowledges that no written order was entered allowing trial counsel to withdraw her motion for new trial, it contends that the record shows that the trial court orally granted this motion. Consequently, the State argues that the motion for new trial initially filed by trial counsel was "withdrawn and not pending" at the time appointed counsel filed his "Amended Motion For New Trial."

Tennessee Rule of Criminal Procedure 33(b) states, "A motion for a new trial shall be in writing or, if made orally in open court, be reduced to writing, within thirty days of the date the order of sentence is entered." Tenn. R. Crim. P. 33(b). The Tennessee Supreme Court emphasized the strict thirty-day deadline in this rule:

> [Rule 33(b)] is mandatory, and the time for the filing cannot be extended. Tenn. R. Crim. P. 45(b). A trial judge does not have jurisdiction to hear and determine the merits of a motion for a new trial that has not been timely filed. State v. Dodson, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989); State v. Givhan, 616 S.W.2d 612, 613 (Tenn. Crim. App. 1981); Massey v. State, 592 S.W.2d 333, 334-35 (Tenn. Crim. App. 1979). The trial judge's erroneous consideration of ruling on a motion for new trial not timely filed, as in this case, does not validate the motion. Dodson, 780 S.W.2d at 780.

Failure to file a written motion for new trial within the required thirty days not only results in the appellant losing the right to have a hearing on the motion, but it also deprives the appellant of the opportunity to argue on appeal any issues that were or should have been presented in the motion for new trial. Dodson, 780 S.W.2d at 780; Givhan, 616 S.W.2d at 613; Massey, 592 S.W.2d at 333.

State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997).

Here, trial counsel filed Booth's motion for new trial on September 25, 2008, a few days before October 2, 2008, the date the sentencing hearing occurred and the date the judgments were entered in this case. At the October 2, 2008 sentencing hearing, the trial court noted that Booth had filed a letter citing errors made by trial counsel. The court allowed trial counsel, an assistant public defender, to withdraw and appointed private counsel for Booth. Following this appointment, the court and trial counsel had the following exchange:

> The Court: [I am appointing private counsel] to represent [Booth] on the motion for new trial. And because of the charges [and] accusations [Booth has made] against the public defender's office, I'll just relieve you at this point and let [newly appointed counsel] prepare his motion for new trial. . . . [D]o you understand what I'm saying, Mr. Booth? We're going to appoint another lawyer to represent you, sir, on your motion for new trial. And he can include in that motion for new trial all of these matters that you've alleged. . . .

> [Assistant Public Defender]: Your Honor, for the record I would like to withdraw my motion for new trial that I filed on Mr. Booth's behalf.

> The Court: All right.

> [Assistant Public Defender]: And his new attorney can file it.

> The Court: That's fine. And that motion for new trial will then include [these] matters. And if [appointed counsel] decides he wants to use your motion for new trial, he can.

Two orders were subsequently entered allowing trial counsel to withdraw and appointing private counsel to represent Booth. However, no written order was entered regarding trial counsel's request to withdraw her motion for new trial.

On January 16, 2009, appointed counsel filed an "Amended Motion For New Trial." At the motion for new trial hearing on January 21, 2009, the following exchange occurred:

> [Appointed counsel]: First thing, Judge, I wanted to say, on the Sentencing Hearing, [which] was October 2nd. And, I guess the Court will address about that but I was appointed to handle the Motion For New Trial. [Trial counsel] had already filed the Motion For New Trial . . . . And, I have filed a Amended Motion For New Trial. And, I would ask the Court to consider the one she filed as kind of tolling the time, since I just filed mine January 16th.
>
> The Court: All right. I assumed that the Motion For New Trial that she filed would still be a part of the record. And, you could take that Motion For New Trial and look at it and amend it. So, we'll allow that.
>
> [Appointed Counsel]: [Trial counsel] made some comment at the Sentencing Hearing [that] she was withdrawing the Motion For New Trial.
>
> The Court: We can allow that to be filed. You can piggy back that Motion For New Trial.

We agree that the Amended Motion For New Trial was filed more than thirty days after the judgments in this case were entered. However, because the trial court made the determination that trial counsel's timely filed motion for new trial continued to be a part of the record following the appointment of new counsel, we will not declare the amended motion for new trial untimely. Under these circumstances, we conclude that a review of the issues presented in this appeal is appropriate.

I. **Sufficiency of the Evidence.** Booth argues that the evidence is insufficient to support his convictions. Specifically, he challenges his identification as the perpetrator. First, he contends that a knife was not found in his possession at the time he was taken into custody. Second, he argues that the show-up procedure that resulted in the identifications of him was suggestive. Third, he argues that the discrepancies in the eyewitnesses' testimony regarding the sequence of events and the clothes the perpetrator was wearing during the offense make the evidence insufficient to support his convictions.

In response, the State argues that the three eyewitness identifications of Booth as the perpetrator and Booth's arrest a short distance from the crime scene with $191 and a Hostess cupcake in his possession are more than enough evidence to support his convictions. In addition, the State argues that although the police did not initially find a knife on Booth's person, they later found a knife in an area close to where he was arrested. Moreover, it

contends that both McKinnie and Bridges testified that Booth brandished a knife during the commission of the offenses. Accordingly, the State asserts that the jury resolved any questions of fact and any questions of witness credibility in favor of the prosecution when it convicted Booth of especially aggravated kidnapping, aggravated assault, and aggravated robbery. We agree with the State.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from the evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt."

A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt; therefore, a defendant on appeal has the burden of showing that the evidence is insufficient to support the jury's verdict. State v. Thacker, 164 S.W.3d 208, 221 (Tenn. 2005) (citing State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)). A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in the State's favor. Bland, 958 S.W.2d at 659 (citing State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973)). Issues regarding the credibility of witnesses, the weight and value of the evidence, and all factual issues raised by the evidence are resolved by the jury as the trier of fact, and this court does not re-weigh or re-evaluate the evidence. Id. (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978), superseded by statute on other grounds as stated in State v. Barone, 852 S.W.2d 216, 218 (Tenn. 1993)). Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)), perm. to appeal denied (Tenn. Nov. 13, 1990).

"The identity of the perpetrator is an essential element of any crime." State v. Robert Wayne Pryor, No. M2003-02981-CCA-R3-CD, 2005 WL 901140, at *3 (Tenn. Crim. App., at Nashville, Apr. 19, 2005) (citing State v. Thompson, 519 S.W.2d 789, 793 (Tenn. 1975)). The State has the burden of proving "the identity of the defendant as the perpetrator beyond a reasonable doubt." Id. (citing State v. Sneed, 908 S.W.2d 408, 410 (Tenn. Crim. App.

-6-

1995)).  The identity of the defendant as the perpetrator may be established by direct evidence, circumstantial evidence, or a combination of the two.  Thompson, 519 S.W.2d at 793.

Here, Bridges and McKinnie, the victims in this case, identified Booth as the perpetrator the night the offenses took place and at trial.  In addition, Terry Palony, one of Bridges's employees, also identified Booth the night of the incident and at trial.  This court has held that "[t]he credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made."  State v. Radley, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999) (citing State v. Strickland, 885 S.W.2d 85, 87-88 (Tenn. Crim. App. 1993)), perm. to appeal denied (Tenn. Dec. 27, 1999).  In addition, the identification of the defendant as the perpetrator is a question of fact for the jury after considering all the relevant proof. Strickland, 885 S.W.2d at 87 (citing State v. Crawford, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982), perm. to appeal denied (Tenn. June 21, 1982)).

Booth was convicted of especially aggravated kidnapping, aggravated robbery, and aggravated assault.  Regarding count one, especially aggravated kidnapping is defined as false imprisonment "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]"  T.C.A. § 39-13-305(a)(1) (2006).   Regarding count two, especially aggravated kidnapping is alternatively defined as false imprisonment "[c]ommitted to hold the victim for ransom or reward, or as a shield or hostage[.]"  Id. § 39-13-305(a)(3) (2006).  The crime of false imprisonment is committed by one "who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty."  Id. § 39-13-302(a).  Regarding count three, aggravated robbery is defined as a robbery "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]"  Id. § 39-13-402(a)(1) (2006). Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear."  Id. § 39-13-401(a) (2006).  In order to convict a person of aggravated assault, as charged in count four, the State must prove beyond a reasonable doubt that the individual "[i]ntentionally or knowingly commits an assault as defined in § 39-13-101 and . . . [u]ses or displays a deadly weapon."  Id. § 39-13-102(a)(1)(B) (2006).  Section 39-13-101(a)(2) (2006) defines assault as "[i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury[.]"

The evidence presented at trial of Booth's guilt was overwhelming.  Aside from the eyewitness identifications given by McKinnie, Bridges, and Palony, Booth was found a short distance from the store and was arrested within minutes of the incident.  At the time of Booth's arrest, he had a Hostess cupcake and $191, the exact amount taken from McKinnie,

in his possession. Although Booth argues that he did not possess a knife at the time he was taken into custody, both McKinnie and Bridges testified that Booth brandished a knife while committing the offenses in this case. Moreover, a knife was discovered in an area very close to the area where Booth was found. As we previously stated, it is the jury's prerogative to determine the credibility of witnesses, the weight and value of the evidence, and all factual issues raised by the evidence, and we refuse to re-evaluate the evidence on appeal. See Bland, 958 S.W.2d at 659. Upon review, we conclude that the evidence was more than sufficient to support Booth's convictions for especially aggravated kidnapping, aggravated robbery, and aggravated assault.

**II. Prosecutorial Misconduct.** Booth contends that the prosecutor inappropriately expressed his personal opinions, employed inflammatory language, and improperly commented on Booth's failure to testify at trial during closing argument. Although Booth admits that he failed to make a contemporaneous objection during trial, he argues that this court should review these claims for plain error. In response, the State argues that Booth's failure to make a contemporaneous objection resulted in a waiver of this issue on appeal and that the prosecutor's comments do not amount to plain error.

Booth has requested that we review this issue under the plain error standard. In Adkisson, our court stated that in order for an error to be considered plain:

(a) the record must clearly establish what occurred in the trial court;
(b) a clear and unequivocal rule of law must have been breached;
(c) a substantial right of the accused must have been adversely affected;
(d) the accused did not waive the issue for tactical reasons; and
(e) consideration of the error is "necessary to do substantial justice."

State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994).

The courts of this state have routinely noted that "closing argument is a valuable privilege that should not be unduly restricted." State v. Bane, 57 S.W.3d 411, 425 (Tenn. 2001). The trial court has substantial discretion in controlling the course of arguments and will not be reversed unless there is an abuse of that discretion. Id. (citing Terry v. State, 46 S.W.3d 147, 156 (Tenn. 2001)). In addition, prosecutorial misconduct does not constitute reversible error absent a showing that it has affected the outcome of the trial to the prejudice of the defendant. Id. (citing State v. Chalmers, 28 S.W.3d 913, 917 (Tenn. 2000)). However, an attorney's comments during closing argument "must be temperate, must be predicated on evidence introduced during the trial of the case, and must be pertinent to the issues being tried." State v. Gann, 251 S.W.3d 446, 459 (Tenn. Crim. App. 2007) (citing State v. Sutton, 562 S.W.2d 820, 823 (Tenn. 1978)), perm. to appeal denied (Tenn. April 7, 2008). In order

to be entitled to relief on appeal, the defendant must "show that the argument of the prosecutor was so inflammatory or the conduct so improper that it affected the verdict to his detriment." State v. Farmer, 927 S.W.2d 582, 591 (Tenn. Crim. App. 1996), perm. to appeal denied (Tenn. June 3, 1996). This court has recognized the following "five general areas of prosecutorial misconduct":

> 1.  It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.
>
> 2.  It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant. See State v. Thornton, 10 S.W.3d 229, 235 (Tenn. Crim. App. 1999); Lackey v. State, 578 S.W.2d 101, 107 (Tenn. Crim. App. 1978); Tenn. Code of Prof'l Responsibility DR 7-106(c)(4).
>
> 3.  The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury. See Cauthern, 967 S.W.2d at 737; State v. Stephenson, 878 S.W.2d 530, 541 (Tenn.1994).
>
> 4.  The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict. See Cauthern, 967 S.W.2d at 737; State v. Keen, 926 S.W.2d 727, 736 (Tenn. 1994).
>
> 5.  It is unprofessional conduct for a prosecutor to intentionally refer to or argue facts outside the record unless the facts are matters of common public knowledge.

State v. Goltz, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003) (quoting Standards Relating To The Prosecution Function And The Defense Function §§ 5.8-5.9 Commentary (ABA Project on Standards for Criminal Justice, Approved Draft 1971), perm. to appeal denied (Tenn. May 27, 2003). In addition, this court must consider the following factors in determining whether the argument of the prosecutor was so inflammatory or improper to negatively affect the verdict: (1) the conduct complained of viewed in context and in light of the facts and circumstances of the case; (2) the curative measures undertaken by the court and the prosecution; (3) the intent of the prosecutor in making the improper arguments; (4) the cumulative effect of the improper conduct and any other errors in the record; and (5) the relative strength and weakness of the case. Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976).

Here, Booth notes several comments by the prosecutor that included phrases such as "I feel like"; "I do feel"; "I do think"; "[t]here's just no question"; and "I frankly just think" and argues that the prosecutor committed misconduct in expressing his personal opinion during closing argument. The State argues that these comments were a "rhetorical device" rather than an expression of "his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant." Goltz, 111 S.W.3d at 6.

Booth also contends that the following statements by the prosecutor during his closing argument inflamed the jury:

> [T]his might have been a very different case had Mr. Bridges['s] employees not been in that van. You know, I don't want to get all melodramatic and say [we would have] been trying a murder or something like that, but you don't know what the outcome could [have] been.

The State contends that the aforementioned comment, when viewed in the context of the prosecutor's entire closing argument, was an inadvertent comment rather than a comment "calculated to inflame the passions or prejudices of the jury." Id.

Finally, Booth argues that the prosecutor, in his closing arguments, improperly commented on his failure to testify at trial:

> Well, ladies and gentlemen, you know it's not rocket science but the State has presented six witnesses here. We did that in a few hours. [Booth] has elected not to put on any proof. That's, of course, his right. . . .
>
> . . . .
>
> . . . Booth did this. He's been given a fair trial. He has had an opportunity to present his defense. He's been given his Constitutional Rights.

The State argues that these comments, when viewed in the context of the entire closing statement, show that the prosecutor was merely emphasizing that its proof was uncontradicted and that Booth had failed to present witnesses in his own behalf. The State contends that these statements were in no way a comment on Booth's right to remain silent.

Initially, we agree with the State that Booth has waived this issue by failing to make a contemporaneous objection to the prosecutor's comments at trial. See Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to

prevent or nullify the harmful effect of an error."); State v. McPherson, 882 S.W.2d 365, 373 (Tenn. Crim. App. 1994), perm. to appeal denied (Tenn. June 20, 1994); State v. Gregory, 862 S.W.2d 574, 578 (Tenn. Crim. App. 1993); and State v. Thomas, 818 S.W.2d 350, 364 (Tenn. Crim. App. 1991), perm. to appeal denied (Tenn. Sept. 9, 1991). Additionally, even if this Court were inclined to grant the requested relief, Booth has failed to demonstrate that he was prejudiced by the prosecutor's comments. See State v. Bigbee, 885 S.W.2d 797, 809 (Tenn. 1994) (holding that when a prosecutor makes improper remarks during a closing argument, the appellate court must determine "whether the impropriety affected the verdict to the prejudice of the defendant"), superseded by statute on other grounds as stated in State v. Odom, 137 S.W.3d 572, 611 (Tenn. 2004) (Barker, J., dissenting); see also State v. Seay, 945 S.W.2d 755, 763 (Tenn. Crim. App. 1996) (holding that the defendant must show that the prosecutor's remark was "so inflammatory or so improper that it affected the verdict to his or her detriment"), perm. to appeal denied (Tenn. Sept. 9, 1996). Waiver notwithstanding, our review of the record shows that the evidence of Booth's guilt was overwhelming; therefore, Booth cannot show that he was prejudiced by the prosecutor's comments. Booth has failed to establish all five factors required for plain error. See Adkisson, 899 S.W.2d at 641-42. For these reasons, Booth is not entitled to relief on this issue.

**III. Whether the Separate Convictions for Especially Aggravated Kidnapping, Aggravated Robbery, and Aggravated Assault Violate Due Process Principles.** Booth argues that his separate convictions for especially aggravated kidnapping, aggravated robbery, and aggravated assault violate due process pursuant to State v. Anthony, 817 S.W.2d 299 (Tenn. 1991) and State v. Dixon, 957 S.W.2d 532 (Tenn. 1997). He specifically contends that the movement or confinement of Bridges was not beyond that necessary to commit the aggravated assault against Bridges or the aggravated robbery against McKinnie. He first argues that the aggravated assault on Bridges was committed so he could accomplish the aggravated robbery and successfully leave the scene. He also contends that the aggravated assault lasted only a few moments, and Bridges was not injured. He further argues that by having Bridges at his side, it was less likely that McKinnie or anyone else would have tried to prevent his escape from the aggravated robbery and aggravated assault that he had just committed. Finally, Booth asserts that by taking Bridges outside the store, Booth actually increased Bridges's chances of summoning help, increased Booth's risk of detection, and decreased Bridges's risk of harm.

In response, the State contends that Booth's movement of Bridges outside the store and towards his van was beyond that necessary to accomplish the aggravated assault. It asserts that the aggravated assault was complete when Booth put the knife up to Bridges throat and that the especially aggravated kidnapping occurred when Booth forced Bridges out of the store at knife point and then demanded that Bridges take him to Bridges's van.

-11-

The State further asserts that Booth's movement of Bridges created a significant danger and increased Bridges's risk of harm. The State also argues that Booth's conviction for especially aggravated kidnapping of Bridges was beyond that necessary to commit the aggravated robbery of McKinnie. It contends that the aggravated robbery was completed when Booth brandished the knife and took the money from McKinnie. Once the aggravated robbery was complete, Booth then forced Bridges to leave the store at knife point. Again, the State contends that the movement of Bridges created a significant danger and increased Bridges's risk of harm.

In Anthony, 817 S.W.2d at 300, the Tennessee Supreme Court contemplated "the propriety of a kidnapping conviction where detention of the victim is merely incidental to the commission of another felony, such as robbery or rape." The Anthony court held that the proper test is "whether the confinement, movement, or detention is essentially incidental to the accompanying felony . . . or whether it is significant enough, in and of itself, to warrant independent prosecution and is, therefore, sufficient to support such a conviction." Id. at 306. In Dixon, 957 S.W.2d at 535, the Tennessee Supreme Court replaced the "essentially incidental" analysis with a new two-part test:

> We must now decide whether the movement or confinement was beyond that necessary to consummate the act of [the other offense]. Anthony, 817 S.W.2d at 306. If so, the next inquiry is whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm. Id.

An affirmative response to the second part of the test means that "[a] separate conviction for kidnapping does not violate due process." State v. Richardson, 251 S.W.3d 438, 443 (Tenn. 2008) (citing Dixon, 957 S.W.2d at 535).

In Richardson, the Tennessee Supreme Court clarified the status of the law on this issue:

> The Dixon two-part test fully replaces the Anthony "essentially incidental" analysis. As we previously have observed, the Dixon test "provides the structure necessary for applying the principles announced in Anthony." State v. Fuller, 172 S.W.3d 533, 537 (Tenn. 2005). Although we adhere to the due process principles adopted in Anthony, we now make clear that the Anthony analysis should not be used in conjunction with the Dixon two-part test. The Dixon test should be used exclusively in all future inquiries.

251 S.W.3d at 443 (internal footnotes omitted).

We agree with the State that Booth's movement of Bridges outside the store and towards his van was beyond that necessary to accomplish the aggravated assault and aggravated robbery. Both the aggravated robbery and aggravated assault were complete when Booth forced Bridges out of the store at knife point and then demanded that Bridges take him to Bridges's van. We agree with the State that Booth's movement of Bridges created a significant danger and increased Bridges's risk of harm. Accordingly, Booth is not entitled to relief on this issue.

**IV. <u>Omission of a Jury Instruction on Voluntary Intoxication.</u>** Booth argues that the trial court erred in failing to instruct the jury on voluntary intoxication. Although he concedes that he did not ask for this instruction or object to the omission of this instruction, he contends that because the evidence presented at trial sufficiently raised the issue of voluntary intoxication, the trial court had a duty to provide this instruction to the jury. The State argues that Booth has waived this issue. <u>See</u> Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Waiver notwithstanding, the State contends that Booth cannot establish all five factors required of the plain error standard. <u>See</u> <u>Adkisson</u>, 899 S.W.2d at 641-42. We agree.

Here, the only evidence of potential intoxication was provided by Officer Gray, who, when asked by the State on re-direct if Booth had "any indicia of drug use," testified:

> I mean, from my own professional experience, yes, sir. You know, he – he was under the influence of something. What it was, I don't know. He was very upset, very violent, very belligerent, the entire time I had him. From the time I made contact with him to the time I dropped him off at [the jail], he was a quite angry, violent, upset person. And [it] wasn't all just emotions, you know, he had some type of drugs or alcohol into his system that helped, you know, give him – make him a little braver, a little more violent.

Following this testimony, the defense, on re-cross examination, elicited testimony from Officer Gray that he did not see Booth use drugs that day, could not prove that Booth was under the influence of drugs at the time that he committed the offenses in this case, and did not recover any drugs on Booth's person or in the surrounding area.

Although not a defense, voluntary intoxication "is admissible in evidence if it is relevant to negate a culpable mental state." T.C.A. § 39-11-503(a); <u>see also</u> <u>Harrell v. State</u>,

-13-

593 S.W.2d 664, 672 (Tenn. Crim. App. 1979) ("Proof of intoxication alone is not a defense to a charge of committing a specific intent crime nor does it entitle an accused to jury instructions as requested by the appellants; there must be evidence that the intoxication deprived the accused of the mental capacity to form specific intent."), perm. to appeal denied (Tenn. Jan. 28, 1980); Ben Mills v. State, No. W2005-00480-CCA-R3-PC, 2006 WL 44381, at *8 (Tenn. Crim. App., at Jackson, Jan. 5, 2006) ("[W]hile intoxication is not in itself a defense to prosecution, a defendant's intoxication, whether voluntary or involuntary, is admissible in evidence if it is relevant to negate a culpable mental state."), perm. to appeal denied (Tenn. May 1, 2006).

The record shows that defense counsel did not rely on voluntary intoxication in her opening or closing statements. In addition, the defense did not present any evidence regarding Booth's use of alcohol or drugs the day he committed the offenses in this case and attempted to refute any allegation of voluntary intoxication on re-cross examination during Officer Gray's testimony. Most importantly, the defense presented no evidence that Booth lacked the culpable mental state required for the charged offenses because of voluntary intoxication. Because the defense failed to present any proof about how Booth's voluntary intoxication negated his culpable mental state, we conclude that the trial court did not err in failing to give an instruction regarding voluntary intoxication to the jury. Booth has failed to establish all five factors required for plain error. See Adkisson, 899 S.W.2d at 641-42. Accordingly, Booth is not entitled to relief on this issue.

**V. Merger.** Booth contends that the trial court's failure to merge his two convictions for especially aggravated kidnapping amounted to plain error. The State concedes that the trial court should have merged these two convictions since Booth received multiple punishments for the same offense. Here, Booth was charged in count one of especially aggravated kidnapping, defined as false imprisonment "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]" T.C.A. § 39-13-305(a)(1) (2006). He was charged in count two of especially aggravated kidnapping, alternatively defined as false imprisonment "[c]ommitted to hold the victim for ransom or reward, or as a shield or hostage[.]" Id. § 39-13-305(a)(3) (2006). We agree

Because the same evidence was used to prove the offenses, the offenses involved the same victim, and the evidence presented involved one discrete criminal act, we conclude that Booth's dual convictions for especially aggravated kidnapping violate the principles of double jeopardy. "Where commission of one crime necessarily involves commission of the second, the offense so involved is said to be merged in the offense of which it is a part. . . . [T]he doctrine of merger does not apply where the offenses are separate and distinct, but only where the identical criminal acts constitute both offenses." 21 Am. Jur. 2d Criminal Law §

21 (1998) (citations omitted); <u>see also</u> <u>State v. Robertson</u>, No. W1999-01872-CCA-R3-CD, 2000 WL 1863511, at *4 (Tenn. Crim. App., at Jackson, December 1, 2000). We, therefore, merge the two convictions for especially aggravated kidnapping into a single conviction.

## CONCLUSION

We conclude that the evidence was more than sufficient to support the convictions; that the prosecutor's statements during the closing argument were not prejudicial and did not constitute plain error; that the separate convictions for especially aggravated kidnapping, aggravated robbery, and aggravated assault do not violate due process pursuant to <u>State v. Anthony</u>, 817 S.W.2d 299 (Tenn. 1991) and <u>State v. Dixon</u>, 957 S.W.2d 532 (Tenn. 1997); and the trial court did not err in failing to instruct the jury on voluntary intoxication. However, we conclude that the trial court did commit plain error in failing to merge the two convictions for especially aggravated kidnapping. Accordingly, we merge the dual especially aggravated kidnapping convictions into a single conviction and remand the case to the trial court for entry of corrected judgments to reflect the merger of these convictions. We affirm the judgments of the trial court in all other respects.

_____
CAMILLE R. McMULLEN, JUDGE